IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE S.,

        Claimant,

   v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Respondent.

No. 21 CV 2577

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Claimant Michelle S.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 18, 25] pursuant to Federal

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Rule of Civil Procedure 56. For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 18] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 25] is granted.

## PROCEDURAL HISTORY

On July 20, 2018, Claimant protectively filed a Title II application for DIB alleging disability beginning on April 20, 2015, which she later amended to a disability onset date of July 21, 2017. (R. 71, 368–69). Claimant also filed a Title XVI application for SSI on August 6, 2018, with the same amended disability onset date. (R. 71, 370–75). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 111–76, 217–18). On May 29, 2020, Claimant appeared by telephone and testified at a hearing before ALJ Jessica Inouye. (R. 85–99). ALJ Inouye also heard testimony by telephone on that date from impartial medical expert ("ME") Dr. Allen Heinemann (R. 71–84) and impartial vocational expert ("VE") Kari A. Seaver. (R. 100–09). After the hearing, VE Seaver answered interrogatories posited by Claimant's counsel about her job estimates (R. 724–30) and provided additional testimony at a supplemental telephone hearing on December 15, 2020. (R. 50–62). On January 29, 2021, ALJ Inouye denied Claimant's claims for DIB and SSI. (R. 16–37).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her amended alleged onset date of July 21, 2017. (R. 21). At step two, the ALJ found that Claimant had a severe

2

impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 22). Specifically, Claimant has dysthymia, posttraumatic stress disorder, panic disorder, and degenerative disc disease of the lumbar spine (R. 22). The ALJ also acknowledged several non-severe impairments – a history of thyroid cancer (status post thyroidectomy), a history of atypical chest pain, a history of asthma, uterine fibroids, right femur lesion, minimal degenerative disc disease of the cervical spine, a history of celiac artery compression, irritable bowel syndrome ("IBS"), and headaches – but concluded these impairments or combination of impairments caused only transient and mild symptoms and limitations, are well controlled with treatment, have not met the twelve-month durational requirement, or were otherwise not adequately supported by the medical evidence in the record. (R. 22–24). Finally, the ALJ discussed that Claimant takes Adderall, which is typically prescribed for attention deficit hyperactivity disorder ("ADHD"), before crediting the ME's conclusion that ADHD was not a medically determinable impairment. (R. 24). Nor did the ALJ assess a medically determinable vision impairment based on Claimant's alleged "blind or low vision," as those symptoms were not supported by any evidence in the record. *Id.*

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24–26). In particular, the ALJ considered listings 1.04 (including subsections A, B, and C), 12.04, 12.06, and 12.15 and evaluated whether the "paragraph B" or "paragraph C" criteria had been satisfied for the mental listings. *Id.* In finding the "paragraph B" criteria

3

had not been met, the ALJ noted Claimant had limitations in certain broad areas of functioning, starting with a mild limitation in understanding, remembering, or applying information. (R. 25). In interacting with others, concentration, persistence, or pace, and adapting or managing oneself, Claimant had moderate limitations. (R. 25–26). As to the "paragraph C" criteria, the ALJ concluded the medical evidence of record established, among other things, that Claimant had more than a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. (R. 26). Further to the "paragraph C" criteria, the ALJ noted that there was no record evidence demonstrating that changes or increased demands have led to exacerbation of Claimant's symptoms and signs and to deterioration in her functioning. *Id.*

> The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; able to work in an indoor temperature-controlled work environment but should avoid extremes in temperatures, wetness, humidity and pulmonary irritants; avoid workplace hazards including unprotected heights and moving, dangerous machinery; able to learn, understand, remember, and carry out simple work instruction, and engage in simple routine tasks; able to learn an entry-level job within a few weeks; should work in a familiar setting, occasional changes in work tools, locations and tasks could be tolerated; and occasional interactions with coworkers, supervisors and the general public." (R. 26).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a pharmacy technician. (R. 26). The exertional demands of this work, however, exceeded Claimant's residual functional capacity and so the ALJ concluded that Claimant was unable to perform her past relevant work as actually or generally performed. (R. 34). At step five, the ALJ concluded that, considering Claimant's age,

4

education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 35–37). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the light exertional level, including hand packer, assembler, and sorter. (R. 35). The ALJ then found Claimant was not under a disability from July 21, 2017 through January 29, 2021, the date of her decision. (R. 37). The Appeals Council declined to review the matter on March 12, 2021, (R. 6–12), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *see also, Jarnutowski v. Kijakazi*, 2022 WL 4126293, at *4–5 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate

6

discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th

7

Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a). This also extends to the hypotheticals posed to the vocational expert. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2015). Here, the ALJ determined that Claimant had the mental RFC to learn, understand, remember, and carry out simple work instruction, engage in simple routine tasks, learn an entry-level job within a few weeks, work in a familiar setting, tolerate occasional changes in work tools, locations and tasks, and have occasional interactions with coworkers, supervisors and the general public.

This RFC, according to Claimant, is flawed because it does not address the pace at which Claimant can work. Claimant generally "hypothesizes" that "the RFC should have addressed pace directly" like recent Seventh Circuit precedent in *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), yet she does not cite to a single piece of record evidence that she has a pace-related limitation.[3] [ECF No. 18] at 11–12; *see, Jozefyk v. Berryhill,* 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace because he hypothesizes none."); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (explaining that the claimant "bears the burden of proving that she is disabled" and must present medical evidence linking her medical impairment to a functional limitation). Her case, therefore, rests on much different footing than the claimant in *Pavlicek,* where a pace-related limitation was substantiated by more than mere hypothesis. Here, the ALJ reviewed the complete picture of Claimant's

---

[3] Claimant also argues in her reply that the Commissioner failed to address and therefore "waiv[ed] the issue of whether the RFC and hypothetical properly accounted for all of [Claimant's] moderate mental limitations." [ECF No. 26] at 8. The Commissioner dedicated seven pages to the issue. [ECF No. 25] at 11–17. Clearly, no such waiver occurred.

8

limitations before formulating the RFC and posing hypotheticals to the VE, *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011), including her deficiencies of concentration, persistence or pace. *DeCamp*, 916 F.3d at 675; *Moreno*, 882 F.3d at 730. The ALJ painstakingly reviewed the opinions of Claimant's treating physicians, finding varying degrees of persuasiveness based on the consistency and supportability of those opinions. (R. 31–33). She also evaluated the objective medical evidence and treatment notes of those physicians, (R. 28–29), and Claimant's subjective symptom statements as well. (R. 27–30). After a longitudinal assessment of the above-described evidence, the ALJ ultimately agreed with the ME's opinion that Claimant had moderate limitations in concentration, persistence, or pace that could be accommodated by the ALJ's precise RFC in this case.

So, although the Court agrees with Claimant (and the Seventh Circuit) that accommodating a moderate concentration, persistence, or pace finding is a fact-specific inquiry, *Christopher G. v. Kijakazi*, 2022 WL 1989119, at *4 (N.D. Ill. 2022), the Court does not believe the ALJ erred by omitting a pace-related RFC restriction here. "The hypothetical possibility that certain impairments could lead to certain functional limitations…is insufficient to disturb the ALJ's conclusions, where evidence of those functional limitations was not offered to the Commissioner or on appeal before this Court." *Charmaine R. v. Saul*, 2021 WL 83737, at *4 (N.D. Ill. 2021). The ALJ built a logical bridge between her acknowledgment of Claimant's mental limitations and the restrictions contained in the RFC and supported that RFC with record evidence. That is enough. The Court sees no reversible error in how the ALJ accommodated Claimant's functional limitations in the RFC.

9

## II. The VE's Testimony and Step Five

Claimant contends that the ALJ relied on flawed testimony from the VE when she concluded at step five that Claimant could perform work that existed in significant numbers in the national economy. The Court is not persuaded. Unlike recent precedent in *Ruenger v. Kijakazi,* 23 F.4th 760, 762 (7th Cir. 2022), the ALJ met her burden here to ensure the VE's job estimate was the product of a reliable methodology by following up on Claimant's job estimate inquiry with detailed interrogatories to the VE, as well as holding a supplemental hearing for further testimony from the VE on that issue. *See also, Chavez v. Berryhill*, 895 F.3d 962, 968–70 (7th Cir. 2018); *Brace v. Saul,* 970 F.3d 818, 819 (7th Cir. 2020). In doing so, she supported her step five analysis with substantial evidence and so her decision stands.

At step five, the burden shifts from the claimant to the ALJ. The ALJ must demonstrate that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations. See 20 C.F.R. § 416.960(c)(2). Almost always, the ALJ will rely on the testimony of a VE for those estimated job numbers. VEs are "professionals under contract with SSA to provide impartial testimony in agency proceedings," and they must have "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek*, 139 S. Ct. at 1152 (citing 20 C.F.R. §§ 404.1566(e), 416.966(e); SSA, Hearings, Appeals, and Litigation Law Manual I–2–5–50, I–2–1–31.B.1 (Aug. 29, 2014)) (internal quotations and citations omitted). When providing job estimates, VEs use various sources,

10

including the Dictionary of Occupational Titles (DOT) and the Occupational Employment Survey that organizes its job estimates by a "standard occupational classification" (SOC) system. *Ruenger,* 23 F.4th at 762; *Biestek*, 139 S. Ct. at 1152. The VE's job estimate must be the product of a reliable methodology, *Brace,* 970 F.3d at 821–22, meaning it is based on "well-accepted" sources and the VE explains his or her methodology "cogently and thoroughly." *Biestek*, 139 S. Ct. at 1155.

Here, the ALJ relied on the testimony of the VE in concluding that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy that exists in significant numbers. (R. 35–37). Specifically, the VE's testimony identified three jobs at the light exertional level – hand packer, assembler, and sorter – that a person with Claimant's limitations could perform. (R. 35–37, 728–30) (updating her initial estimates following the March 2020 hearing and opining in December 2020 that 158,500 hand-packer jobs, 98,500 assembler jobs, and 59,500 sorter jobs exist in the national economy for someone with Claimant's limitations). After Claimant's counsel challenged the VE's job estimate at Claimant's initial hearing, the ALJ properly pressed the VE to substantiate her job numbers in two ways. First, the ALJ sent detailed interrogatory questions to the VE regarding her methodology (if the questions were not duplicative of Claimant's questions at the hearing), the VE provided fulsome response. (R. 728–29). The ALJ then convened a supplemental

11

hearing with the VE for the sole purpose of allowing Claimant's counsel to probe the VE's methodology further, which he did.[4] (R. 50–62).

In doing so, the ALJ fulfilled her duty at step five to ensure the VE used a reliable, well-accepted methodology in arriving at her job numbers. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable."). The VE, for her part, "cogently and thoroughly" described the process by which she arrived at her job numbers. *Biestek*, 139 S. Ct. at 1155 (testimony meets the substantial evidence threshold when the vocational expert "cogently and thoroughly" describes a well-accepted methodology). She explained that she begins her job calculations a base level education, training, and professional experience, and then turns to the data contained in the Occupational Employment Quarterly, a chart that lists, among other things, the SOC-OES codes described above and how many DOT titles comprise that SOC

---

[4] Claimant accuses the VE of making "simple math errors" at the supplemental hearing that compel remand. [ECF No. 26] at 2. But what Claimant characterizes as a math error was, in fact, the VE using her education and experience to more realistically approximate the amount of time an employer would allow an individual to be off-task during the work day. (R. 107–08) (noting that the standard for unskilled work, as established by the Department of Labor, is that an individual is allowed to be off-task for no more than 15% of the work day, and although that mathematically computes to being off-task nine minutes per hour, "based on [her] experience…an employer's not going to allow somebody to be off—task nine minutes every hour," but rather, allow them to take the "15-minute break that comes after working for two hours and the 30-minute lunch that also they get and then an additional 12-minute [bathroom break] and not taken all at once but throughout the workday. I mean, that's typically what employers are going to allow."). A more fulsome explanation of how employers implement the Department of Labor's 15% off-task time allowance does not constitute a math error, in the Court's view, nor an issue that requires remand.

code. (R. 728). Using the first job identified for Claimant as an example (hand packer), the VE's methodology is as follows. She looks at the Occupational Employment Quarterly chart for the total current number of people employed for a particular SOC-OES code (SOC code 53-7064 "Hand Packers & Packagers," 645,750 total) and then notes how many DOT titles comprise that number (59 DOT titles make up SOC code 53-7064 for "Hand Packers & Packagers). (R. 728–29). She then breaks that number down by skill level (21,890 sedentary unskilled "Hand Packers & Packagers," 317,402 light unskilled "Hand Packers & Packagers," 164,174 medium skilled "Hand Packers & Packagers," and so on) and compares those numbers, using OccuBrowse (which is operated by SkillTRAN), to the specific DOT code at the skill and exertional level outlined in any given hypothetical. (R. 729). She then, finally, reduces that number based on her professional experience and the particular limitations included in any given hypothetical (in this case, reducing the number of light unskilled "Hand Packers & Packagers," 317,402, by 50% to account for Claimant's limitation of avoiding pulmonary irritants). (R. 729).

Suffice it to say, the VE's explanation and substantive methodology satisfies the "matching problem" between larger SOC groupings and individual DOT job titles that the Seventh Circuit maligned in *Ruenger*. And while Claimant says that OccuBrowse and SkillTRAN are not reliable in her reply, [ECF No. 26] at 3–4, the issue is "not whether SkillTRAN is reliable as a matter of law, but rather whether the VE's testimony in this case, drawing in part on the SkillTRAN data, was sufficient to sustain the agency's step five burden," which this Court finds it was. *Dunn v. Kijakazi,* No. 2021 WL 5105169, at *12 (E.D. Wis. 2021) (citing *Bruno v. Saul,* 817

13

Fed. Appx. 238, 243 (7th Cir. 2020) (affirming where the VE "testified that his estimate was based on what he called the 'SkillTRAN approach,'" and holding that while "the VE's description did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a 'reasoned and principled explanation,' at least by the low substantial evidence standard"); *Foth v. Saul*, 2021 WL 535433 at *8 (E.D. Wis. 2021) (noting that while the Seventh Circuit has not spoken directly on the reliability of the SkillTRAN software, "courts in this circuit have upheld the VE's use of SkillTRAN and the ALJ's reliance on the numbers produced by SkillTRAN when the VE explains the methodology behind SkillTRAN"); *Djuric v. Berryhill,* 2018 WL 4705845, at *4 (E.D. Wis. 2018) (collecting cases)); *see also, Frankie M. v. Kijakazi,* 2022 WL 168094, at *2 (N.D. Ind. 2022). The VE's reliance on her education and experience in the field, the Occupational Employment Survey, OccuBrowse and SkillTRAN, and the DOT, constitutes "more than a mere scintilla," *Biestek*, 139 S. Ct. at 1154, and provides an adequate foundation for the VE's estimates.

In sum, the VE offered ample explanation that her method for estimating job numbers is a well-accepted one, and the Court is satisfied that her estimates reasonably approximate the number of suitable jobs available for Claimant. Substantial evidence therefore supports the ALJ's decision as required at step five. *Biestek*, 139 S. Ct. at 1155.

### III. Claimant's Constitutional Argument and the Separation of Powers Clause

Finally, Claimant dedicates four pages to a constitutional separation of powers challenge that alleges "several government actors" – namely, the ALJ and the

14

Appeals Council – exercised power that they did not lawfully possess due to a constitutionally defective delegation of power. [ECF No. 18] at 12–15. An unconstitutional statutory removal protection in 42 U.S.C. § 902(a)(3), according to Claimant, compels remand under Supreme Court precent in *Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021) and *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020).

Claimant's failure to show that any injury resulted from this allegedly invalid delegation of authority makes this argument a nonstarter. The Commissioner admits 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." [ECF No. 25] at 3 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.")). But a claimant seeking relief on that basis must show, post-*Collins,* that the restriction actually caused her harm in "some direct and identifiable way." *Cheryl T. v. Kijakazi,* 2022 WL 3716080, at *4 (N.D. Ill. 2022). And Claimant has shown no nexus here between "the removal restriction and the harm suffered," for "the mere fact of a disappointing outcome on her application for Social Security benefits will not suffice." *Id.* (citation and internal quotations omitted); [ECF No. 18] at 14 (identifying the purported harms Claimant suffered as "1) she did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled; 2) she did not receive a constitutionally valid decision from an ALJ to which she was entitled; 3) she received an unfavorable decision from this constitutionally illicit ALJ adjudication process; 4) she did not receive a

15

constitutionally valid adjudication process from SSA's Appeals Council to which she was entitled; 5) she did not receive a constitutionally valid determination by the Appeals Council to which she was entitled; and 6) she received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process."). Nor will mere speculation that the Commissioner "theoretically might have acted differently" meet Claimant's burden of showing actual harm. *Kaufmann v. Kijakazi,* 32 F.4th 843, 849 (9th Cir. 2022) (quoting *Collins*, 141 S. Ct. at 1789); [ECF No. 26] at 9–10.

In sum, the Court agrees with the overwhelming weight of authority in this circuit and nationwide and finds Claimant's constitutional argument without merit. *Cheryl T.,* 2022 WL 3716080, at *4; *Lizette C. v. Kijakazi,* 2022 WL 3369274, at *2 (N.D. Ill. 2022); *Michelle S. v. Kijakazi,* 2022 WL 4465833, at *5 (N.D. Ill. 2022); *Jason M. v. Kijakazi,* 2022 WL 2071096, at *12 (S.D. Ind. 2022); *Linnear v. Kijakazi,* 2022 WL 1493563, at *7 (S.D. Ga. 2022) (noting that the court "has not found, a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality"); *Green v. Kijakazi,* 2022 WL 1644936, at *25 (E.D. Wis. 2022); *Ghakarhi B. v. Commissioner*, 2022 WL 4397529, at *7 (N.D. Ga. Sept. 22, 2022) (collecting cases).

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 18] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 25] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated:   September 29, 2022